UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEREK STEVEN MCCORMACK,<br><br>Petitioner,<br><br>v.<br><br>DAO VANG, Acting Warden,[1]<br><br>Respondent. | Case No. 24-cv-00232-AMO (PR)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; AND DENYING CERTIFICATE OF APPEALABILITY** |

## I.    INTRODUCTION

Petitioner Derek Steven McCormack, a state prisoner currently incarcerated at California Health Care Facility, filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, representing himself.  McCormack challenges his 2020 Mendocino County conviction and 2021 sentence of nine years for arson of an inhabited dwelling, stemming from a negotiated plea. Dkt. 1 at 1-3.[2]  Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby **DENIES** all claims in the petition and his request for an evidentiary hearing for the reasons set forth below.

## II.    BACKGROUND

### A.    Factual Background

On the morning of August 5, 2019, Mendocino County Sheriff Deputy Christian Denton and Sgt. Van Hagen responded to a reported structure fire at the Potter Valley home of

---

[1] Dao Vang, the current acting warden of the prison where McCormack is incarcerated, has been substituted as Respondent pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

[2] Page number citations refer to those assigned by the Court's electronic case management filing system and not those assigned by the parties.

United States District Court
Northern District of California

McCormack's ex-fiancée, Jillian Clark.[3] Dkt. 13-10 (Resp't Ex. K - CalFire Investigation Report by Mendocino Unit Battalion Chief Ryan Smith)[4] at 4, 12; Dkt. 13-2 (RT)[5] 69; Dkt. 13-11 (Resp't Ex. M - Mendocino County Sheriff's Office Case Report by Deputy Denton) at 5. At the time, Ms. Clark lived in that home with her father (Mr. .Clark) and mother. Dkt. 13-10 at 4. Mr. Clark had called dispatch to report that "someone had attempted to burn down his garage (which is attached to the residence) and the garage door was still smoldering." Dkt. 13-11 at 5. Mr. Clark advised dispatch that he "did not need fire to respond." *Id.*

Deputy Denton arrived at the scene, and he requested a fire investigator. Dkt. 13-10 at 12. Chief Smith responded along with Officer Joey Howard, who was assigned to Chief Smith for field training. *Id.* Upon arrival, Deputy Denton briefed Chief Smith of the circumstances and showed Chief Smith burns on the garage door, which Chief Smith proceeded to evaluate. *Id.* at 12. According to Chief Smith, the fire had self-extinguished, but charring and damage was done to the garage door. *Id.* Chief Smith determined that "[t]he fire [wa]s believed to have occurred sometime during that night while [Ms. Clark], her mother and [f]ather were sleeping inside the residence." *Id.* Chief Smith noticed and took a picture of a spike strip[6] laid across the driveway, concealed by dirt that did not match any of the dirt around the home and appeared to have been brought in from another location. *Id*. at 4, 13; RT 103-104. Chief Smith explained that he was "not sure what [the spike strip] was for, either to take out fire trucks responding to the residence or

---

[3] McCormack spells his ex-fiancée's last name as "Clarke." *See* Dkt. 1 at 3. However, police and fire reports spell her last name as "Clark." *See* Dkts. 13-10, 13-11. The Court uses the latter spelling.

[4] The CalFire Investigation Report is a sixteen-page document, which includes "Summary" and "Narrative" sections, and the Court cites both sections using the page number citations assigned by its electronic case management filing system. *See* Dkt. 13-10.

[5] When referring to the Reporter's Transcript ("RT"), the Court uses the numbers in the upper-right hand corner of the pages, which is consistent with the parties' citations to the record. *See* Dkt. 13-2 (Resp't Ex. C - RT).

[6] Deputy Denton testified at the preliminary hearing that the evidence he collected included two spike strips, which he described as "a piece of rubber hose with nails stuck through it at various angles and sharpened." RT 70-71, 87-88. In general, a spike strip is "a long thin device with sharp points on it that is put across a road to stop vehicles by making holes in their tires." *See* https://dictionary.cambridge.org/us/dictionary/english/spike-strip (last visited Nov. 14, 2025).

people leaving the residence to get away from the fire." RT 21.

Ukiah Fire Department Fire Investigator, Chief Justin Buckingham, arrived at the scene next. Dkt. 13-10 at 12; Dkt. 13-11 at 7-8. Chiefs Smith and Buckingham as well as Officer Howard conducted further investigation of the burn patterns located on the garage door. Dkt. 13-10 at 12-13. They located six different points of origin for the fire on the garage door and determined the cause of the fire to be arson. *Id.* at 4, 13; Dkt. 13-11 at 8; Dkt. 13-12 (Resp't Ex. N - Ukiah Valley Fire Authority Supplemental Investigation Report) at 2; RT 23-24, 110-111. While walking the premises, Chief Buckingham located a red plastic cap on the driveway that appeared to belong to a "Zippo-type" lighter fluid container. Dkt. 13-10 at 13; Dkt. 13-11 at 8; Dkt. 13-12 at 2. During their investigation, they learned that Ms. Clark had recently ended her engagement with McCormack two days prior. Dkt. 13-10 at 13; Dkt. 13-11 at 5; RT 129. Ms. Clark provided them with the home address of McCormack and the make and model of his vehicle. Dkt. 13-10 at 13; Dkt. 13-11 at 5.

Chief Smith and Officer Howard then traveled to the residence of McCormack in Covelo, California, where they were met by Deputy Trent James, who is a Covelo resident and familiar with the McCormack family. Dkt. 13-10 at 14; Dkt. 13-11 at 9; RT 113. Deputy James introduced them to McCormack's father, Steve McCormack, who escorted them to the McCormack residence. Dkt. 13-10 at 14.

Upon arrival at the McCormack residence, Chief Smith turned on his audio recorder which recorded thirty-three minutes of the encounter, first with McCormack's father and then with McCormack, prior to the battery dying. *Id.*; Dkt. 14 (Resp't Ex. L - DVD Recording). Chief Smith located McCormack sleeping in his bedroom, Dkt. 13-10 at 14, which was a separate structure from the McCormack residence, RT 114. McCormack's father instructed McCormack to come outside to speak with the officials. Dkt. 13-10 at 14; Dkt. 14 at 2:55-4:14, 5:02-5:33. Chief Smith explained to McCormack that there had been a fire at the Clark residence and that he was there to speak with McCormack about his potential involvement. *Id.* Chief Smith explained to McCormack that he was not being detained or arrested. *Id.* McCormack repeatedly denied any knowledge of the fire, asked if everyone in the house was okay, and claimed he had been at home

3

the entire night, apart from helping a friend change a flat tire.  Dkt. 13-10 at 4, 14; Dkt. 14 at 3:07-3:17, 3:55-4:14, 5:02-8:20, 18:00-19:10, 22:30-23:05, 24:00-24:15.

Chief Smith then asked McCormack if he could look at McCormack's cell phone.  Dkt. 14 at 6:09-6:14; RT 116.  McCormack subsequently "unlocked his cell phone and granted [Chief Smith] permission to search [McCormack's] cell phone."  Dkt. 13-10 at 14; Dkt. 14 at 6:10-10:40.  Upon searching McCormack's phone, Chief Smith found "a total of five open web browser titled the following: #1 Tinder, #2 Reverse Phone Lookup, #3 homemade spike strips - Google search, #4 [P]otter [V]alley structure fire - Google search, [and] #5 About ANORO ELLIPTA for COPD symptoms."  Dkt. 13-10 at 14-15; *see also* RT 116, 118-119, 124-126.  Chief Smith "opened the browser for the homemade spike strips Google Search . . . [and] [t]he top video [was] titled [']How to make homemade spike strip['] posted by YouTube used HowDoI?"  Dkt. 13-10 at 14.  Chief Smith took photos of all five open web browsers.  *Id.* at 4, 14-15; Dkt. 14 at 6:10-10:51, 21:00-22:20, 23:00-24:05, 28:25-28:40.  Chief Smith noted as follows in his report: "The spike strip in this video is very similar in construction to those found in the CLARK driveway."  Dkt. 13-10 at 14; Dkt. 14 at 21:00-21:10; 23:26-23:39.

Chief Smith returned the cell phone and asked McCormack if he would allow Chief Smith, Officer Howard, and Deputy James to search McCormack's bedroom, to which McCormack replied yes and escorted them to his bedroom.  Dkt. 13-10 at 15.  In the bedroom, Chief Smith found two butane torch style lighters located on a dresser.  *Id*.  Chief Smith then asked McCormack if he could search his vehicle parked outside, and McCormack replied yes.  *Id.*  McCormack then escorted Chief Smith and Officer Howard to his GMC Sierra extended cab pickup truck.  *Id.*

While searching McCormack's bedroom and truck, Chief Smith asked McCormack again when he first learned about the fire at his ex-fiancée's home in Potter Valley, to which McCormack responded that he received a text from Ms. Clark "[a few] hours ago."  Dkt. 14 at 22:32-22:57.  Chief Smith then confronted McCormack and asked him why his web browser history included a search for homemade spike strips, and McCormack admitted to searching for them but claimed he did not build them.  *Id.* at 23:00-24:31.  Chief Smith explained to

McCormack that the picture of the spike strip from his web browser history was "very similar" to the one he found "laid across [the Clark's] driveway." *Id.* at 23:26-23:39.

Chief Smith then continued searching McCormack's truck and bedroom and found "materials that matched up with what [they] found [at the scene]." *Id.* at 24:13-24:20, 25:05-25:12. In McCormack's pickup truck, Chief Smith found the following items: one empty Zippo lighter box in the console area, an unlocked Apache Model 2800 gun box containing a Glock Model 22 Pistol, two ten round (loaded) pistol magazines, thirty bullets in a red box located behind the driver's seat, and an empty Zippo lighter fluid can (missing the cap) located in the front driver-side corner of the pickup bed. Dkt. 13-10 at 15; RT 119-120, 134. The cell phone and all items located in the truck except the empty Zippo lighter box were collected as evidence. Dkt. 13-10 at 15. Chief Smith noted that the cap to the Zippo lighter fluid can found at the scene of the alleged arson on the Clark's property "matche[d] the style" of the empty Zippo lighter fluid can missing the cap, which was found in McCormack's truck. Dkt. 14 at 28:42-28:50. Chief Smith also collected dirt from McCormack's property, and, upon examining the clay-like dirt, Chief Smith noted that it's similarity to the clay-like dirt he found on the spike strip at the scene. *Id.* at 29:22-29:55, 31:54-31:58. Chief Smith asked McCormack's parents if he could enter the bedroom again to collect two butane style torch lighters because Chief Smith believed it was the type of device that "ignited the fire based on the burn patterns on the exterior siding," but they denied his request. *Id.* at 30:26-31:47. Later, Chief Smith noticed that these two lighters were placed on the tailgate of McCormack's truck, presumably by his parents, so these lighters were also collected as evidence. Dkt. 13-10 at 16.

After collecting all the evidence, Chief Smith placed McCormack in handcuffs to detain him and read him his *Miranda* rights. *Id.* at 15. After McCormack acknowledged his rights, he "continued to speak to [Chief Smith] and never invoked his [r]ight to remain silent." *Id.* At 2:03 PM, Chief Smith placed McCormack under arrest for arson. *Id.*

**B.    Procedural History**

    **1.    Pre-Trial Motion to Suppress, Conviction, and Sentencing**

On August 7, 2019, the Mendocino County District Attorney filed a complaint charging

5

United States District Court
Northern District of California

McCormack with arson of an inhabited dwelling and alleged that the arson was committed within an area proclaimed by the Governor to be in a state of emergency. Dkt. 13 (CT)[7] at 9-10. On October 3, 2019, the district attorney filed additional misdemeanor counts. CT 41-43; RT 67. Thereafter, McCormack retained private defense counsel, Albert J. Kubanis, Esq. CT 18.

On September 24, 2019, McCormack's preliminary hearing took place. RT 67-143. A month after the preliminary hearing, on October 24, 2019, Attorney Kubanis filed a motion to suppress evidence seized at McCormack's residence on the basis that his "property was entered without benefit of [a] search warrant nor any lawful exception and therefore was illegal." CT 44-48. The state trial court calendared the hearing on the motion to suppress for November 15, 2019. CT 44. However, on October 31, 2019, McCormack retained new defense counsel, Chris Andrian, Esq. CT 50; RT 186, 201. Any forthcoming hearing dates were vacated, including the hearing on the motion to suppress. RT 201-202.

On August 20, 2020, McCormack entered his no contest plea. CT 88-96; RT 385-390. Pursuant to a negotiated plea, McCormack pleaded no contest to the arson charge and admitted the accompanying special allegation, in exchange for the dismissal of multiple misdemeanor charges. CT 88-96; RT 385-387. On April 27, 2021, McCormack was sentenced to nine years in prison. CT 226-227; RT 518-540; Dkt. 1-1 (Pet'r Ex. C - Abstract of Judgment) at 30-31.

### 2. Post-Conviction Appeals, Collateral Attack, and Federal Court Proceedings

On March 14, 2022, the California Court of Appeal affirmed McCormack's judgment of conviction on direct review. Dkt. 13-4 (Resp't Ex. E - California Appellate Court Opinion). McCormack did not file a petition for review in the California Supreme Court.

On August 19, 2022, McCormack filed a state habeas petition in the Mendocino County Superior Court, in which he raised the same claims as those raised in the instant petition: (1) a Fourth Amendment claim relating to the illegal search of his private property; and (2) an ineffective assistance of counsel ("IAC") claim for failing to pursue the motion to suppress. Dkt.

---

[7] The Court refers to the numbers at the lower-right hand corner of the Clerk's Transcript ("CT") pages, which follows the parties' convention. *See* Dkt. 13 (Resp't Ex. A - CT).

13-5 (Resp't Ex. F - State Superior Court Petition).  On April 3, 2023, after soliciting an informal response[8] from the District Attorney's office relating to the IAC claim and any deficiencies in the motion to suppress, the state superior court denied the petition.  Dkt. 13-7 (Resp't Ex. H - Denial of State Superior Court Petition).  In its order, the state superior court first denied the claim for a Fourth Amendment violation because a "claim of an illegal search or seizure cannot be brought in a habeas corpus petition."  *See id.* at 2 (citing *In re Sterling*, 63 Cal. 2d 486 (1965)).  It then denied the IAC claim, because:

> . . . Petitioner failed to demonstrate that defense counsel['s] performance fell below an objective standard of reasonableness under professional norms.  The Court further finds that Petitioner failed to prove that counsel provided ineffective assistance and that Petitioner suffered prejudice as a result.  *Strickland v. Washington* (1984) 466 U.S. 668.  Prejudice is defined as "a reasonable probability that . . . a more favorable outcome would have resulted.  *In re Cox* (2003) 30 Cal. 4th 974.

Dkt. 13-7 at 2.

On June 12, 2023, McCormack filed a state habeas petition in the California Court of Appeal.  Dkt. 13-8 (Resp't Ex. I - State Appellate Court Petition).  On July 12, 2023, the state appellate court noted that it ordered a copy of the lower court's April 3, 2023 habeas denial and reviewed a copy of the record of appeal, and, overall, it summarily denied the petition.  *Id*. (Resp't Ex. I - Denial of State Appellate Court Petition) at 92.

On September 26, 2023, McCormack filed a state habeas petition in the California Supreme Court.  Dkt. 13-9 (Resp't Ex. J - State Supreme Court Petition).  On December 13, 2023, the state supreme court summarily denied the petition.  *Id*. (Resp't Ex. J - Docket Sheet Showing Denial of State Supreme Court Petition) at 117.

On January 12, 2024, McCormack filed the instant federal habeas petition.  Dkt. 1.  After the Court issued its Order to Show Cause, Respondent filed an Answer along with supporting exhibits.  Dkts. 12, 13.  Thereafter, McCormack filed a Traverse with an affidavit by Deputy

---

[8] The Court will cover more detail below on the District Attorney's informal response, which includes information relevant to McCormack's IAC claim, including arguments on how the motion to suppress filed by Attorney Kubanis was "deficient on several procedural grounds."  *See infra* BACKGROUND Part II.C.

James.  Dkt. 19.

### C.    Informal Response Outlining Alleged Deficiencies of Motion to Suppress

During state habeas proceedings, the state superior court requested an informal response to McCormack's state superior court petition to address his IAC claim.  In a signed January 3, 2023 letter to Mendocino County Superior Court Judge Victoria Shanahan, Mendocino County District Attorney C. David Eyster provided an informal response to McCormack's state superior court petition, which had been filed on August 19, 2022.  Dkt. 13-6 (Resp't Ex. G - Informal Response). The informal response argues that the October 24, 2019 motion to suppress was "procedurally deficient," and it includes the following background on how the motion to suppress filed by Attorney Kubanis was "deficient on several procedural grounds":

(A) Other than conclusionary statement ("Defendant's property"), the defendant's motion was procedurally deficient in that there was no admissible evidence under penalty of perjury presented in the moving papers to make prima facie showing that the property referred to in the moving papers was indeed the defendant's property and/or that the defendant even had standing to object.

(B) Assuming for the sake of argument that property was searched, the defendant's motion was procedurally deficient in that there was no admissible evidence under penalty of perjury as to whether law enforcement officer versus fire personnel or even citizen off the street conducted the search being complained about.

(C) The declaration of counsel was procedurally deficient in that it was made under objectionable information and belief. California Rule of Court 5.111(b)(2) mandates that "A declaration must be based on personal knowledge and explain how the person has acquired that knowledge. The statements in the declaration must be admissible in evidence."  [FN 1] [Emphasis added.]

[FN 1:]  See, *Star Motor Imports, Inc. v. Superior Court* (1979) 88 Cal. App. 3d 201 [facts alleged on information and belief are hearsay and constitute failure of proof.]

(D) The Kubanis motion was also procedurally deficient in that, contrary to the black letter law of the statute, the defendant's memorandum fails ("shall") to list the specific items of property or evidence sought to be returned or suppressed. While the first page of defendant's motion refers to real property, there are other inferences attempted as to one or more searches of personal property.

(E) Finally, the motion to suppress was procedurally deficient in that it failed to assert with specific facts what of the several CalFire

8

searches were being contested by the motion.

**Kubanis Motion to Suppress [filed October 24, 2019]: Substantively Deficient.**

Given what was reported by the CalFire personnel and not mentioned in the Kubanis motion to suppress, the People had more than sufficient witnesses and testimonial evidence to defeat what was considered by the prosecution to be meritless motion.

Dkt. 13-6 at 2-5.

### D.    Attorney Andrian's Declaration Relating to Motion to Suppress

In a signed declaration dated December 31, 2022, Attorney Andrian, who claimed that District Attorney Eyster "reached out to [him] for comment" on the "claim of [IAC] regarding the motion to suppress," responded as follows, in relevant part:

4. I was the second defense attorney of record from on or about November 8, 2019 through judgment and sentencing on or about April 27, 2021 in the Mendocino County Superior Court criminal case entitled *People v. Derek Steven McCormack*, Superior Court docket number SCUK CRCR 19-3223 0-001.

5. After substituting in as defense counsel of record, I reviewed the prior defense attorney's file, including but not limited to Mr. Kubanis'[s] filed but unheard motion to suppress evidence.

6. I also reviewed all discovery provided by the prosecution to the defense and developed my own defense information.

7. Given the information was privy to through prosecution discovery and other sources, it was my professional judgment that the information contained in the motion to suppress was contrary to the underlying facts as I had come to understand them through my own research and preparation of the defense side of my client's case.

8. Given what I came to know and believe, it was my professional judgment that the motion to suppress filed on behalf by former counsel Kubanis lacked merit.  Further, it was not advantageous to my client's defense strategy to pursue suppression motion that lacked merit.

Dkt. 13-6 (Resp't Ex. G - Andrian Decl. Attached to Informal Response) at 7.

## III.    LEGAL STANDARD

A federal court may entertain a habeas petition from a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Under the Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996,

United States District Court
Northern District of California

9

a district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  The first prong applies both to questions of law and to mixed questions of law and fact, *see Williams v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, *see Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of section 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  *Williams*, 529 U.S. at 412-13.  A state court decision is an "unreasonable application of" Supreme Court authority, falling under the second clause of section 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case."  *Id.* at 413.  The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly."  *Id.* at 411.  Rather, the application must be "objectively unreasonable" to support granting the writ.  *Id.* at 409.

Under the second prong, *see* 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding[.]"  *Miller-El*, 537 U.S. at 340; *Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000).  Moreover, "a determination of a factual issue made by a state court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

On federal habeas review, AEDPA "imposes a highly deferential standard for evaluating

United States District Court
Northern District of California

state-court rulings" and "demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal quotation marks and citations omitted).  Even if constitutional error is established, habeas relief is warranted only if the error had a "substantial and injurious effect or influence in determining the jury's verdict."  *Penry v. Johnson*, 532 U.S. 782, 795-96 (2001) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).

## IV.   DISCUSSION

In applying the above standards on habeas review, this Court is required to "train its attention on the particular reasons—both legal and factual—why state courts rejected a state prisoner's federal claims, . . . and to give appropriate deference to that decision."  *See Wilson v. Sellers*, 584 U.S. 122, 125 (2018) (citations and internal quotation marks omitted).  "This is a straightforward inquiry when the last state court to decide a prisoner's federal claim explains its decision on the merits in a reasoned opinion."  *Id.*  Thus, a federal habeas court "reviews the specific reasons given by the state court[,] and defers to those reasons if they are reasonable."  *Id.*

When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion.  *Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000).  Accordingly, a federal court will "look through" the unexplained orders of the state courts rejecting a petitioner's claims and analyze whether the last reasoned opinion of the state court unreasonably applied Supreme Court precedent.  *See Ylst*, 501 U.S. at 804-06; *LaJoie v. Thompson*, 217 F.3d 663, 669 n.7 (9th Cir. 2000).  Here, the state appellate and supreme courts issued summary denials to McCormack's state habeas petitions.  *See* Dkt. 13-8 at 92, 117.  The Court shall "look through" these unexplained orders to the last reasoned opinion.  *See Ylst*, 501 U.S. at 804-06.  The last reasoned opinion in this case is the state superior court's April 3, 2023 Order, in which the state superior court considered and denied McCormack's Fourth Amendment claim and IAC claim.  *See* Dkt. 13-7 at 2.  Thus, this Court will analyze whether the state superior court unreasonably applied Supreme Court precedent in denying McCormack's claims.  *See id.*

### A.   Fourth Amendment Claim

McCormack contends that his Fourth Amendment rights were violated because police

11

entered and searched his private property. Dkt. 1 at 44-55.[9] In support of this claim, McCormack includes declarations from his mother and father. Dkt. 1 at 45-49. McCormack's father's declaration implied that McCormack was not able to give informed consent to the fire and police officials' search because McCormack had just woken up and was under the influence of drugs. *See id*. at 48 ("He had just been sleeping off an[d] under the influence of drugs and appeared to be sorely confused about what they were asking him[.]").

*Stone v. Powell* bars federal habeas review of Fourth Amendment claims unless the state did not provide an opportunity for full and fair litigation of those claims. *See* 428 U.S. 465, 481-82, 494 (1976). Even if the state courts' determination of the Fourth Amendment issue was incorrect, it will not be remedied in a federal habeas action where the petitioner was provided a full and fair opportunity to litigate the issue. *See Locks v. Sumner*, 703 F.2d 403, 408 (9th Cir. 1983). All *Stone* requires is the initial opportunity for a fair hearing. *See* 428 U.S. at 481-82. "Such an opportunity for a fair hearing forecloses this court's inquiry, upon habeas corpus petition, into the trial court's subsequent course of action," including whether the trial court made any express findings of fact. *See Caldwell v. Cupp*, 781 F.2d 714, 715 (9th Cir. 1986). The existence of a state procedure allowing an opportunity for full and fair litigation of Fourth Amendment claims—rather than a defendant's actual use of those procedures—bars federal habeas consideration of those claims. *See Newman v. Wengler*, 790 F.3d 876, 880 (9th Cir. 2015); *Gordon v. Duran*, 895 F.2d 610, 613-14 (9th Cir. 1990) (holding that whether defendant litigated Fourth Amendment claim in state court is irrelevant if he had opportunity to do so under California law). "The relevant inquiry is whether petitioner had the *opportunity* to litigate his claim, not whether he did in fact do so or even whether the claim was correctly decided." *Ortiz-Sandoval v. Gomez*, 81 F.3d 891, 899 (9th Cir. 1996) (emphasis added). California state procedure provides an opportunity for full litigation of any Fourth Amendment claim.[10] *See id*.;

---

[9] McCormack also requests an evidentiary hearing on his Fourth Amendment claim. *See* Dkt. 1 at 65-67.

[10] For a discussion of what constitutes an opportunity for full and fair litigation, *see Terrovona v. Kincheloe*, 912 F.2d 1176, 1178-79 (9th Cir. 1990), *cert. denied*, *Williams v. Illinois*, 499 U.S. 979 (1991). Federal courts have found no opportunity for full and fair litigation in state court only in

12

Cal. Penal Code § 1538.5.

Here, even though McCormack did not pursue his motion to suppress before pleading no contest, because California has established a procedure which allowed McCormack an *opportunity* for full and fair litigation of Fourth Amendment claims, his habeas claim must fail on this basis. *See Newman*, 790 F.3d at 880; *Gordon*, 895 F.2d at 614.

Moreover, it is clear from the state superior court's April 3, 2023 Order that McCormack presented the same Fourth Amendment claim he raises here, and the state superior court rejected it upon concluding that "[a] claim of an illegal search or seizure cannot be brought in a habeas corpus petition." Dkt. 13-7 at 2 (citing *In re Sterling*, 63 Cal. 2d 486 (1965)). *Sterling* held that a state court could not consider Fourth Amendment claims irrelevant to guilt in a collateral proceeding, absent extraordinary circumstances. *See* 63 Cal. 2d at 487-88. As such, by relying on *Sterling*, the state superior court reasonably found that it was barred from considering McCormack's Fourth Amendment claim and no extraordinary circumstances existed. *See* Dkt. 13-7 at 2.

In sum, because McCormack was provided with such an opportunity, his claim is barred by *Stone*. *See* 428 U.S. at 481-82, 494. Accordingly, the Court **DENIES** habeas relief on McCormack's Fourth Amendment claim because it is not cognizable in a federal habeas proceeding.[11]

Further, because the Fourth Amendment claim on which he seeks an evidentiary hearing is not cognizable, McCormack's request for an evidentiary hearing on his Fourth Amendment claim is also **DENIED**. *See* Dkt. 1 at 65-67.

---

exceptional cases. *See, e.g.*, *Anderson v. Calderon*, 232 F.3d 1053, 1068 (9th Cir. 2000) (finding petitioner did not benefit from opportunity for full and fair litigation in California courts because Fourth Amendment claim at issue did not exist until years after petitioner's arrest and trials), *overruled in part on other grounds*, *Bittaker v. Woodford*, 331 F.3d 715, 717 (9th Cir. 2003).

[11] Although *Stone* prohibits Fourth Amendment claims on collateral review, *Stone* does not bar IAC claims predicated on Fourth Amendment violations. *See Kimmelman v. Morrison*, 477 U.S. 365, 382-383 (1986). Therefore, McCormack's Fourth Amendment issues are more appropriately addressed in connection with his IAC claim, which is discussed next. *See infra* DISCUSSION Part IV.B.

13

United States District Court
Northern District of California

**B.      IAC Claim**

McCormack contends that Attorney Andrian was deficient for failing to litigate Attorney Kubanis's motion to suppress.  Dkt. 1 at 16-20.  The state superior court addressed both this IAC claim and the underlying Fourth Amendment claim, in connection with McCormack's state habeas petition.  *See* Dkt. 13-7 at 2.  The state superior court denied McCormack's IAC claim upon finding that McCormack "failed to demonstrate that defense counsel fell below an objective standard of reasonableness under professional norms . . . [and] failed to prove that counsel provided ineffective assistance . . . ."  *Id.*  The state superior court further concluded that McCormack suffered no prejudice as a result of Attorney Andrian's actions.  *Id.*

In his federal petition, McCormack elaborates on his IAC claim by claiming that Attorney Andrian "'dropped the ball' when it came to do anything about the still pending faulted search motion to suppress."  Dkt. 1 at 13-14.  McCormack claims that pursuing that motion was the "entirety of practically any defense that [he] could present . . . to either challeng[e] the grossly-obvious and illegal search vs. taking a deal offered by the prosecution."  *Id.* at 14.  McCormack adds that he was confused as to why the motion to suppress "just failed to be heard," because he "never heard by the Court that there was anything wrong with the motion," and Attorney Andrian "did not find or declare anything wrong with the motion, though [he] continued to hedge towards inducing [McCormack] to change his plea from not guilty to guilty."  *Id.*  It was not until after McCormack had pleaded no contest to the arson charge that Attorney Andrian "for the first time then claim[ed] that the motion prepared by previous attorney of record, [Attorney] Kubanis, was in his 'professional judgment' to have lacked merit."  *Id*.

The clearly established federal law governing IAC claims is set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  Under *Strickland*, a defendant must show that (1) defense counsel's performance was deficient and that (2) the "deficient performance prejudiced the defense."  *Id.* at 687.  Counsel is constitutionally deficient if his or her representation "fell below an objective standard of reasonableness" such that it was outside "the range of competence demanded of attorneys in criminal cases."  *Id.* at 687-688 (internal quotation marks omitted).  Reviewing courts must "indulge a strong presumption that counsel's conduct falls within the wide

United States District Court
Northern District of California

range of reasonable professional assistance[.]" *Id.* at 689. Where deficient performance is established, "[the] errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 687).

Under AEDPA, a federal court's review of a state court's decision on an IAC claim is "doubly deferential." *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011). The question is not whether counsel's actions were reasonable; rather, the question is whether "there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105; *Bemore v. Chappell*, 788 F.3d 1151, 1162 (9th Cir. 2015) (same). "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard." *Griffin v. Harrington*, 727 F.3d 940, 945 (9th Cir. 2013) (quoting *Harrington*, 562 U.S. at 101).

It is unnecessary for a federal court considering a habeas IAC claim to address the prejudice prong of the *Strickland* test if the petitioner cannot establish incompetence, sufficient to constitute deficient performance, under the first prong. *See Siripongs v. Calderon*, 133 F.3d 732, 737 (9th Cir. 1998). Likewise, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as the result of the alleged deficiencies. *See Strickland*, 466 U.S. at 697; *Williams v. Calderon*, 52 F.3d 1465, 1470 & n.3 (9th Cir. 1995) (applauding district court's refusal to consider whether counsel's conduct was deficient after determining that petitioner could not establish prejudice), *cert. denied*, *Sexton v. Howard*, 516 U.S. 1124 (1996). Finally, failure to file a meritorious suppression motion does not constitute *per se* ineffective assistance of counsel. *See Kimmelman*, 477 U.S. at 384.

To establish that counsel's failure to argue the motion to suppress resulted in counsel being ineffective, a petitioner must demonstrate that counsel's conduct was deficient. *Strickland*, 466 U.S. at 687. Here, McCormack asserts that Attorney Andrian was deficient for failing to revive the motion to suppress filed by Attorney Kubanis, and that the omission prevented McCormack from making an informed choice about whether to plead no contest to the arson charge. *See* Dkt. 1 at 12-20. However, an ineffective strategy by defense counsel does not in and of itself equate to

15

unreasonableness and therefore does not independently amount to ineffective assistance of counsel. *See Strickland*, 466 U.S. at 691 (finding that "a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments"). In a signed declaration, Attorney Andrian wrote:

> Given the information I was privy to through prosecution discovery and other sources, it was my professional judgment that the information contained in the motion to suppress was contrary to the underlying facts as I had come to understand them through my own research and preparation of the defense side of my client's case.

Dkt. 13-6 at 7. Additionally, Attorney Andrian wrote that "it was [his] professional judgment that the motion to suppress filed on behalf by Attorney Kubanis lacked merit." *Id.* Attorney Andrian added that "it was not advantageous to [his] client's defense strategy to pursue suppression motion that lacked merit." *Id*.

A trial attorney has wide discretion in making tactical decisions in their cases. *See United States v. Rodriguez-Ramirez*, 777 F.2d 454 (9th Cir. 1985); *United States v. Murray*, 751 F.2d 1528, 1535 (9th Cir.), *cert. denied*, 474 U.S. 979 (1985), including abandoning inconsistent or unsupported defenses, *see Knowles v. Mirzayance*, 556 U.S 111, at 123-125 (2009); *Correll v. Stewart*, 137 F.3d 1404, 1411-12 (9th Cir. 1998); *Turk v. White*, 116 F.3d 1264, 1267 (9th Cir. 1997). Counsel need not file a motion that he knows to be meritless on the facts and the law. Put simply, defense counsel cannot have been ineffective for failing to raise a meritless motion. *Juan H. v. Allen*, 408 F.3d 1262, 1273 (9th Cir. 2005); *Rupe v. Wood*, 93 F.3d 1434, 1445 (9th Cir. 1996); *see, e.g.*, *Hernandez v. Chappell*, 923 F.3d 544, 557 (9th Cir. 2019) (although counsel "simply forgot" to call witness, error did not rise to level of deficient performance because witness's testimony would have had "minimal probative value"). As such, the state superior court reasonably found that McCormack failed to demonstrate that Attorney Andrian's decision not to revive the motion to suppress "fell below the objective standard of reasonableness under professional norms." Dkt. 13-7 at 2.

While it need not discuss prejudice where McCormack has not established incompetence under the first *Strickland* prong, *see Siripongs*, 133 F.3d at 737, the Court examines the second *Strickland* prong to address McCormack's contention that he was prejudiced by Attorney

16

Andrian's failure to pursue the motion to suppress filed by Attorney Kubanis, who McCormack claims was an "older and well[-]seasoned criminal defense attorney," *see* Dkt. 19 at 16. To establish the second prong, that counsel's failure to argue the motion to suppress resulted in prejudice, a petitioner must demonstrate that had counsel filed the motion, it would have changed the outcome of the case. *Strickland*, 466 U.S. at 687. Further, to establish an IAC claim based on defense counsel's failure to litigate a Fourth Amendment issue, a petitioner must show that: (1) the overlooked motion to suppress would have been meritorious, and (2) there is a reasonable probability that the jury would have reached a different verdict absent the introduction of the unlawful evidence. *Ortiz-Sandoval v. Clarke*, 323 F.3d 1165, 1170-71 (9th Cir. 2003) (citing *Kimmelman*, 477 U.S. at 375); *Bailey v. Newland*, 263 F.3d 1022, 1029 (9th Cir. 2001); *see, e.g.*, *Chong v. United States*, 112 F.4th 848, 864 (9th Cir. 2024) (reversing denial of section 2255 motion based on claim that counsel provided ineffective assistance by not moving to suppress on settled basis that sheriff's deputy intruded on curtilage of home without a warrant and violated Fourth Amendment reasonable expectation of privacy defendant had on his property). In *Ortiz-Sandoval*, the Ninth Circuit indicated that the deferential standard of review of section 2254(d) also applies to the consideration of the claim not raised by counsel. *See* 323 F.3d at 1170-71. Thus, when faced with a claim that counsel was ineffective for failing to move to suppress evidence illegally seized and faced with a state court decision that rejected the IAC claim on the ground that the motion would have been denied because allegedly unlawful entry was justified by exigent circumstances, the *Ortiz-Sandoval* court examined whether the state court's analysis of the exigent circumstances issue was contrary to or an unreasonable application of clearly established federal law. *See id.* at 1170-72 (rejecting IAC claim).

Here, the state superior court reasonably found no prejudice from Attorney Andrian's failure to revive Attorney Kubanis's motion to suppress because doing so would not have changed the outcome. *See* Dkt. 13-7 at 2. In the informal response provided to the state superior court, District Attorney Eyster explained that the motion was deficient on several procedural grounds and was substantively deficient. Dkt. 13-6 (Resp't Ex. G - Informal Response) at 2-6. He added that the initial motion filed by Attorney Kubanis failed to list the specific items of property it

17

sought to suppress and to assert "with specificity wh[ich] of the several CalFire searches were being contested by the motion." *Id*. at 4-5. Additionally, District Attorney Eyster argued that the motion lacked admissible evidence regarding the search itself and failed to meet the California Rule of Court 5.111(b)(2) requirement of "personal knowledge." *Id*. at 4. Lastly, he concluded that the District Attorney's office had "more than sufficient witnesses and testimonial evidence to defeat what was considered by the prosecution to be a meritless motion." *Id*. at 5. Upon reviewing District Attorney Eyster's informal response, the state superior court reasonably determined that had the motion to suppress been argued, sufficient evidence existed to demonstrate that it would not have been meritorious, and thus it would not have altered the outcome of McCormack's case. *See* Dkt. 13-7 at 2. As such, the state superior court's finding of no prejudice should be given deference as it was not contrary to or an unreasonable application of clearly established federal law. *See Ortiz-Sandoval*, 323 F.3d at 1170-72. Therefore, the state superior court reasonably found that McCormack did not demonstrate that Attorney Andrian's failure to revive the motion to suppress was deficient such that it prejudiced the defense. *See* Dkt. 13-7 at 2.

Accordingly, the Court **DENIES** McCormack's IAC claim.

## V.   CERTIFICATE OF APPEALABILITY

No certificate of appealability is warranted in this case. For the reasons set out above, jurists of reason would not find the Court's denial of McCormack's claims debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). McCormack may not appeal the denial of a certificate of appealability in this Court but may seek a certificate from the Ninth Circuit under Rule 22 of the Federal Rules of Appellate Procedure. *See* Rule 11(a) of the Rules Governing § 2254 Cases.

## VI.   CONCLUSION

For the reasons outlined above, the Court **DENIES** McCormack's claims in the petition and his request for an evidentiary hearing on his Fourth Amendment claim. A certificate of appealability will not be issued. McCormack may seek a COA from the Ninth Circuit Court of Appeals.

United States District Court
Northern District of California

The Clerk of the Court shall terminate any pending motions and close the file.

**IT IS SO ORDERED.**

Dated: February 3, 2026

_____
**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**

19